UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER HUNTE *and*
JONATHAN HUNTE,

       Plaintiffs,

  v.

RUSHMORE LOAN
 MANAGEMENT SERVICES, LLC,

       Defendant.

No. 22-CV-2169 (KMK)

OPINION & ORDER

Esther Hunte
Jonathan Hunte
Newburgh, NY
*Pro se Plaintiffs*

Stephen J. Vargas, Esq.
Gross Polowy LLC
Westbury, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

  Plaintiffs Esther Hunte ("EH") and Jonathan Hunte ("JH"; collectively, "Plaintiffs") bring this Action against Rushmore Loan Management Services, LLC ("Rushmore" or "Defendant"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1–1024.41. (*See* Am. Compl. (Dkt. No. 4).) Before the Court is Defendant's Motion for Summary Judgment. (*See* Defs' Not. of Mot. (Dkt. No. 16).) For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

I. Compliance with Local Rule 56.1

In resolving summary judgment motions, the Court normally recites the relevant facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"). Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried. *See* Local Rule 56.1(a); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001). "A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains." *Holtz*, 258 F.3d at 72. "The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement." *Id*. (quoting Local Rule 56.1(c)). "Failure to submit such a statement may constitute grounds for denial of the motion." Local Rule 56.1(a).

Thus, Defendant, as the moving party, was required to submit a Local Rule 56.1 statement in conjunction with its Motion. In addition, because Plaintiffs are proceeding pro se in the instant Action, Defendant was required to "serve and file a separate document [upon Plaintiffs], together with the papers in support of the motion," a "Notice To Pro Se Litigant Who Opposes a Motion for Summary Judgment" pursuant to Rule 56.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern District of New York. *See* Local Rule 56.2. While Defendant did indeed serve Rule 56.2 papers on Plaintiffs, (*see* Dkt. No. 20), Defendant did not file a Local Rule 56.1 statement.

In conjunction with its papers for the instant Motion, Defendant filed a "Second Memorandum of Law," described on the docket as the "Statement of Material Facts." (*See* Dkt. No. 19.) However, when opening the filing, the document is not a statement of material facts, but instead is an identical copy of Defendant's memorandum of law in support of this Motion.

2

(*Compare* Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 18) *with* Dkt. No. 19.) In review of the entire docket, the Court has not located Defendant's Local Rule 56.1 statement. (*See generally* Dkt.) Moreover, it appears that Defendant did not serve a Local Rule 56.1 statement upon Plaintiffs, despite Rushmore's vigorous reply to Plaintiffs' opposition, urging this Court to deem Defendant's mystery material facts as admitted. (Reply Mem. in Supp. of Mot. ("Def's Reply") 4–5 (Dkt. No. 27).)[1] In an affidavit of service, Defendant claims that Plaintiffs were "served a true copy of the . . . Statement of Material Facts" through the docket filings, specifically listing the "mode of service" as "PACER." (Aff. of Service (Dkt. No. 21).) As noted, Defendant's statement of facts was not filed on the docket, and thus Plaintiffs likely were not served.

---

[1] Even if Defendant had properly filed and served their Statement pursuant to Rule 56.1, and Plaintiffs failed to submit a response to Defendant's 56.1 Statement, the Court affords "special solicitude" to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). As such, the Court would have been well within "its discretion [to] opt to conduct an assiduous review of the record," when deciding the instant Motion. *Holtz*, 258 F.3d at 73; *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and citation omitted)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the record, or are not supported by the citations in the record"); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

"The purpose of a Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz*, 258 F.3d at 74. As such, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . [and] may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Id*. at 73 (quotation marks omitted). However, this case is particularly tricky, as *no Party* has provided the Court with *any* material facts as to which there is no genuine issue to be tried. Accordingly, the Court denies Defendant's summary judgment motion for failure to comply with Rule 56.1. *See Ruffin v. Kirschenbaum & Phillips P.C.*, No. 20-CV-5422, 2022 WL 704943, at *10 (S.D.N.Y. Mar. 9, 2022) ("The failure to submit [a Rule 56.1 Statement] is sufficient grounds to deny the [summary judgment] motion."); *MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006), *aff'd on other grounds*, 235 F. App'x 827 (2d Cir. 2007) (summary order); *Searight v. Doherty Enters., Inc.*, No. 2-CV-604, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying defendant's summary judgment motion without prejudice "[s]ince Defendant has failed to submit the required 56.1 statement, the Court is unable to adequately assess whether there exist any genuine issues of material fact").

## II.  Sufficiency of the Complaint

Despite Defendant's failure to follow Local Rules, the Court must note that Defendant has raised several serious questions about the sufficiency of Plaintiffs' complaint. (*See, e.g.*, Def's Mem. 6 (citing Fed. R. Civ. P. 8(a) to argue for "a motion to dismiss the complaint"); *id*. at 7 ("[T]he Amended Complaint must be dismissed as against the Defendant.").) Specifically, Defendant argues that (1) Plaintiffs' Amended Complaint "must be dismissed against Rushmore because it contains no factual allegations regarding Rushmore," (*see id.* at 6–7), and (2)

4

Plaintiffs' claim is time-barred by the statute of limitations, (*see id*. at 7–8.) The Court will briefly review the validity of Defendant's arguments.

### A.  Relevant Facts from Plaintiffs' Complaint

On October 28, 2005, EH obtained a home mortgage loan on a property located at 42 Booker Drive, Newburgh, NY 12550 (the "Property") from Lehman Brothers Bank, a Federal Savings Bank ("FSB") in the original principal amount of $337,840.00, memorialized in a promissory note, dated October 28, 2005, and secured by a mortgage, dated October 28, 2005. (*See* Am. Compl. 5 (stating that "[o]n October 28, 2005, Plaintiff Esther Hunte executed a promissory note"); *see also* Def's Decl. in Supp. of Mot. ("Rushmore Decl.") ¶ 2 (Dkt. No. 17).) The mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc., Aurora Loan Services ("Aurora"), and "was thereafter purportedly assigned to Nationstar Mortgage LLC on June 21, 2012." (*See* Am. Compl. 5.) According to the Amended Complaint, "Plaintiff [EH] affirmatively alleged improprieties with respect to both [of the Aurora and Nationstar] purported mortgage assignments[,] as well as to whether the subject note was ever delivered or properly assigned to Nationstar in *Nationstar Mortgage LLC v. Esther Hunte,* Fed. No:[]16[-]CV[-]870[8]." (*Id*.)

Plaintiffs allege that "[o]n or around January 2011, [EH] entered into a modification conference with Aurora Loan Services[,] which was conducted by the Supreme Court of the State of New York County of Orange." (*Id*.) However, Plaintiffs allege that Nationstar "failed to modify the [l]oan [a]greement as so ordered by the court." (*Id*.) Finally, Plaintiffs allege that "[i]nstead of Nationstar choosing to issue the [l]oan [m]odification[,] . . . Nationstar . . . elected to defy the Court order and file a complaint in federal court on or around November 9, 2016. (*Id*. at 6; *see also* Compl. (Dkt. No. 1; Case No. 16-CV-8708).) This referenced case was also litigated before this Court (the "Initial Action"). (*See generally* Dkt. (Case No. 16-CV-8708).)

Plaintiffs allege that, in the Initial Action, EH "filed an answer to the complaint . . . with . . . an affirmative defense that Nationstar was ordered to provide a loan modification but had been negligent in its duty to properly modify the loan." (Am. Compl. 6.) In addition, Plaintiffs allege that Defendant "is the current Servicer and is the entity engaged in the violation of Dual Tracking Regulation." (*Id*. at 12.)

  B. Analysis

Here, Plaintiffs allege that by filing "an answer to the complaint [in the Initial Action] . . . with . . . an affirmative defense that Nationstar was ordered to provide a loan modification but had been negligent in its duty to properly modify the loan[,]" EH intended to "[e]nsure in no uncertain terms that there is no doubt in anyone's mind that [EH] is not waiving her right to have the dual tracking issue litigated once it was established in this case." (Am. Compl. 6.)

As relevant to the instant Action, RESPA is "a consumer protection statute that was enacted by Congress to 'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges." *Galli v. Astoria Bank*, No. 16-CV-3549, 2017 WL 4325824, at *3 (E.D.N.Y. Sept. 27, 2017) (quoting 12 U.S.C. § 2601(a)). RESPA, amended by Dodd-Frank effective July 21, 2011, also created the Consumer Financial Protection Board ("CFPB") and charged it with creating rules, regulations, and interpretations necessary to achieve RESPA's purpose. *See* 12 U.S.C. § 2617(a). The CFPB, in turn, adopted a series of regulations that servicers must follow after a payment default. *Galli*, 2017 WL 4325824, at *4.

One such regulation was "Regulation X," 78 Fed. Reg. 10696 (Feb. 14, 2013), now codified at 12 C.F.R. § 1024. Regulation X contains provisions governing "dual tracking" that prohibit a servicer from commencing a foreclosure proceeding or conducting a foreclosure sale if the borrower has submitted a "complete loss mitigation application" within specified timeframes.

6

12 C.F.R. §§ 1024.41(f)-(g). Borrowers have a private cause of action to enforce the dual tracking provisions and to recover actual damages, costs, and attorneys' fees. 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a); *Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736, 2016 WL 3566234, at *2 (S.D.N.Y. June 24, 2016).

12 C.F.R. § 1024.41(g) provides, in relevant part:

> If a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option [and there are no appeals pending or possible];
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

Construed liberally, Plaintiffs appear to allege that they "entered into a modification conference" in January 2011, which allegedly precluded Nationstar from starting *any* foreclosure proceedings under RESPA. (*Id*. at 5; *see also id.* at 6 ("Instead of Nationstar choosing to issue the loan modification as ordered by state court, Nationstar . . . elected to defy the court order and file a complaint in federal court . . . .").) Given the relevant RESPA laws and regulations, Plaintiff's dual tracking claim appears to be deficient in several ways. First, "Plaintiff[s] fail[] to allege key facts about [their] own conduct that would be necessary to state a claim under § 1024.41(g)." *Almazon, v. JP Morgan Chase Bank, N.A.*, No. 19-CV-4871, 2020 WL 1151313, at *18 (S.D.N.Y. Mar. 9, 2020). "For example, [they] do[]not state when [they] completed a 'complete loss mitigation application,' except to allege, in conclusory terms," that they were entitled to a loan modification based upon a state court proceeding. *Id*. (*See also* Am. Compl. 5. (stating that EH "entered into a modification conference" and "all the modification documents

7

were reviewed and accepted" but no allegations about the complete loss mitigation application) This is insufficient. *See Rodriguez-Wilson v. Banco Santander de Puerto Rico*, 501 F. Supp. 3d 53, 58 (D. P.R. 2020) ("Failure to allege the date of submission is reason to dismiss the complaint: absent this information, the Court cannot determine whether the RESPA claim is timely." (collecting cases)); *Almazon*, 2020 WL 1151313, at *18 (citing *Forscht v. Select Portfolio Servicing, Inc.*, No. 17-CV-2659, 2018 WL 1757610, at *2 (S.D. Tex. Apr. 12, 2018) ("[W]ithout some factual allegations on when a plaintiff submitted a complete loss mitigation application, a Regulation X claim does not rise beyond a speculative level.").

Second, the Regulation X prohibition is not as broad as Plaintiffs appear to believe—"[i]t extends only to moving for a foreclosure judgment or order of sale, or conducting that sale." *Almazon*, 2020 WL 1151313, at *18. "The CFPB has made clear that § 1024.41(g) does not prohibit a servicer from advancing the foreclosure process (if the first foreclosure notice or filing was made before the servicer received a complete loss mitigation application) so long as the servicer does not take action that will 'directly result in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale.'" *Id*. (citing Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) ("Mortgage Servicing Rules"), 78 Fed. Reg. 10834 (Feb. 14, 2013) ("[T]he Bureau has adjusted the prohibition on proceeding with a foreclosure sale to state that a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale.").

Here, there are three salient issues. First, while a newly filed action in federal court may seem like an escalation in the negotiation process, the act of filing a case in court is not one "that will directly result in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale." *See Almazon*, 2020 WL 1151313, at *3, *18 (finding that a mortgage servicer initiating a

foreclosure action on a property "by filing a summons, complaint, and notice of pendency" and "serving discovery requests" are not sufficient to give rise to a dual tracking claim). As such, Nationstar filing an action in federal court in 2016 does not inherently violate dual tracking. Second, Defendant raises a valid threshold question as to whether Rushmore is indeed the correct entity to be sued *at all* when the entirety of the alleged dual tracking claim occurred through Nationstar's conduct as alleged by Plaintiffs. (*See* Def's Mem. 7.)

Third, Plaintiffs also "fail[] to [adequately] allege any actual damages proximately caused by Defendant's alleged dual tracking violations." *Almazon*, 2020 WL 1151313, at *19. Although 12 U.S.C. § 2605(f)(1)(B) permits a plaintiff to recover up to $2,000 in statutory damages when the lender has engaged in a "pattern or practice" of violations, an individual dual-tracking claim requires a plaintiff to allege and prove "actual damages" that were caused by the improper dual-tracking. 12 U.S.C. § 2605(f)(1)(A). To allege actual damages, Plaintiffs must plead facts that link an injury to "defendant's alleged RESPA violations—rather than the underlying failure to pay her mortgage and the potential foreclosure sale." *Ehrenfeld v. Wells Fargo, N.A.*, No. 19-CV-2314, 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019). Construed liberally, Plaintiffs allege emotional damages in the form of "depression and emotional harm from this ordeal." (Am. Compl. 6.) "Assuming that is true, [they] ha[ve] not alleged facts showing [D]efendant's alleged RESPA violations—rather than the underlying failure to pay [the] mortgage and the potential foreclosure sale—caused these emotional damages." *Ehrenfeld*, 2019 WL 4933631 at *5 (citing *Roth v. CitiMortgage Inc.*, 12-CV-2446, 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused

9

by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters.")).[2]

Given the potential deficiencies in Plaintiffs' complaint, the Court grants leave to Defendant to file a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) by no later than 30 Days from the filing of this Order.

### III.  Standing for Plaintiff JH

Finally, federal courts have an independent obligation to resolve any issue about their subject matter jurisdiction sua sponte, because "[s]tanding is the threshold in every federal case, determining the power of the court to entertain the suit." *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 270–71 (E.D.N.Y. 2022) (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008). "To demonstrate standing, a plaintiff must have 'alleged a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted).  The "constitutional minimum of standing contains three elements." *Lujan*

---

[2] The Court also notes that, even if Plaintiffs did submit a loss mitigation application, Plaintiffs' claim may exceed the three-year statute of limitations.  Borrowers may "enforce the provisions of [Regulation X] pursuant to section 6(f) of RESPA," 12 C.F.R. § 1024.41(g), and claims arising pursuant to section 6(f) of RESPA are subject to a three-year statute of limitations, beginning on "the date of the occurrence of the violation," 12 U.S.C. § 2614; *see also Rodriguez-Wilson*, 501 F. Supp. 3d at 57–58 (collecting cases).  "[R]equests for summary judgment allegedly contravene Regulation X because they constitute motions for foreclosure judgment or order of sale." *Rodriguez-Wilson*, 501 F. Supp. 3d at 58 (citation and quotation marks omitted).

In the Initial Action, Nationstar filed its first motion for summary judgment on April 27, 2017.  (*See* Not. of Mot. (Dkt. No. 16; Case No. 16-CV-8708).)  Accordingly, Plaintiff had to file her RESPA cause of action no later than April 27, 2020.  *See Rodriguez-Wilson*, 501 F. Supp. 3d at 58 (collecting cases).  However, after the initial summary judgment was vacated and remanded by order of the Second Circuit, *see Nationstar Mortgage, LLC, v. Hunte*, 775 Fed. Appx. 20 (2d Cir. 2019) (summary order), Nationstar filed its *second* motion for summary judgment on December 5, 2019, (*see* Not. of Mot. (Dkt. No. 35; Case No. 16-CV-8708)).  Plaintiff filed the instant Action on March 15, 2022, which would be within the statute of limitations as calculated from the second motion.

10

*v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id*. (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by favorable decision.'" *Id*. (quoting *Simon*, 426 U.S. at 38).

"In addition to these 'constitutional limitations' on federal court jurisdiction, the standing inquiry also 'involves . . . prudential limitations[.]'" *Zutel v. Wells Fargo Bank, N.A.*, No. 12-CV-3656, 2014 WL 4700022, *4 (E.D.N.Y. Sept. 22, 2014) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)). The Supreme Court has held that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Additionally, the Supreme Court "has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,'" and requires that "the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Id*. (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

Here, it is clear that JH does not have standing to bring a RESPA claim. Defendant implicitly raises a constitutional and prudential standing question before the Court by describing JH as "a natural person who, upon information and belief, is a relative of [EH] . . . [and] is not a

11

party to any of the subject mortgage loan documents." (Def's Mem. 2.) RESPA at its core "is a consumer protection statute that provides a mechanism for regulating the real estate settlement process and if entities or persons responsible for servicing federally regulated mortgage loans fail to comply with any provision of RESPA, they shall be liable to the borrower for each such failure." *Garrasi v. Selene Finance, LP*, 407 F. Supp. 3d 110, 116 (N.D.N.Y. 2019) (citation, quotation marks, and alterations omitted). "Thus, a defendant's liability in a civil action under RESPA is limited to borrowers." *Id*.

As alleged, and as evidenced by the mortgage documents, EH—and EH alone—obtained a home mortgage on the Property on October 28, 2005. (Am. Compl. 5 (stating that "[o]n October 28, 2005, Plaintiff[] Esther Hunte executed a promissory note"); Rushmore Decl. ¶ 2; Rushmore Decl. Ex. A (Dkt. No. 17-1).) During the relevant time period, JH is not listed as a party to the mortgage loan documents and does not appear to claim ownership of the Property. (*See generally* Rushmore Decl. Ex. A; Rushmore Decl. Ex. B.) As noted, JH did write his name on several of EH's loan documents describing himself as EH's "Attorney-in-fact." (*See, e.g.*, Rushmore Decl. Ex. A at 5, 8, 10.) However, it is beyond dispute that JH is "not a borrower or otherwise obligated on the [Property] mortgage and mortgage note and did not suffer an injury-in-fact." *Garrasi*, 407 F. Supp. 3d at 116 (quotation marks and citation omitted).

"It is the burden of the party invoking federal jurisdiction to establish standing." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013); *see also Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) ("[I]t is the burden of the party who seeks an exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (citation and internal quotation marks omitted)). To the extent that JH is attempting to appear as

EH's attorney, attorneys generally do not have third-party standing, with two exceptions that JH has not alleged in the Amended Complaint. *See Kowalski v. Tesmer*, 543 U.S. 125, 130–31 (2004) (identifying only two cases where the Supreme Court "recognized an attorney-client relationship as sufficient to confer third-party standing"). JH has not alleged that he is "invoking the rights of an existing client." *Id*. at 131 (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). In addition, the case at bar does not "fall[] within [a] class of cases where [the Supreme Court] has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Id*. (quotation marks and citation omitted) (discussing *Dep't of Labor v. Triplett*, 494 U.S. 715 (1990), which allowed a plaintiff to "invoke the due process rights of [] claimants [of the Black Lung Benefits Act] to challenge [a] fee restriction" that effectively limited plaintiffs' ability to seek attorney representation).[3] Moreover, even assuming that JH has a legitimate reason to attempt to bring these claims for EH, JH cannot raise EH's claims because there is no apparent "hindrance to [EH's] ability to protect . . . her own interests." *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003). JH has not alleged a single reason as to why EH cannot litigate this issue. (*See generally* Am. Compl.) Indeed, EH has proven that she *can* protect her own interest, given her participation in the Initial Action before this Court. (*See generally* Dkt. (Case No. 16-CV-8708).)

Accordingly, the Court finds that Plaintiff JH lacks standing to bring a claim under RESPA and must be dismissed from this Action as a matter of law.

---

[3] Because JH has not appeared in this Action as an attorney, it remains unclear to the Court as to whether JH is in fact a barred attorney.

IV.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 16), terminate Plaintiff Jonathan Hunte from the Action, and to mail a copy of this Opinion & Order to Plaintiff EH's address listed on the docket.  Given that, during the pendency of this litigation, the Property (which is listed as Plaintiff's address on the docket) was subject to foreclosure and sold, the Court additionally requests Defendant's counsel to serve a copy of this Opinion upon Plaintiff EH at her current address.  The Court will hold a status conference on May 2, 2023 at 2:00 PM.

SO ORDERED.

Dated:   March 14, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge