UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ESTHER HUNTE,

                         Plaintiff,

   v.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

                         Defendant.

No. 22-CV-2169 (KMK)

OPINION & ORDER

Appearances:

Esther Hunte
Newburgh, NY
*Pro se Plaintiff*

Stephen J. Vargas, Esq.
Gross Polowy LLC
Westbury, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff Esther Hunte, proceeding pro se, brings this Action against Rushmore Loan Management Services, LLC ("Rushmore" or "Defendant"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq., through its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1 et seq. (*See* Am. Compl. (Dkt. No. 4).) Before the Court is Defendant's Rule 12(c) Motion for Judgment on the Pleadings. (*See* Not. of Mot. (Dkt. No. 43).) For the following reasons, Defendant's Motion is denied.

I. Background

The Court assumes the Parties' familiarity with the facts and the procedural history of this case as described in *Hunte v. Rushmore Loan Management Services, LLC*, No. 22-CV-2169,

2023 WL 2504734, at *2 (S.D.N.Y. Mar. 14, 2023) and *Nationstar Mortgage LLC v. Hunte*, No. 16-CV-8708, 2020 WL 2836431, at *2 (S.D.N.Y. June 1, 2020). Although the Amended Complaint is still the operative pleading, a few additional allegations appear in Plaintiff's opposition that are relevant to the instant Motion.[1]

### A. Plaintiff's Mortgage

As a brief recap, Plaintiff obtained a mortgage on a property located at 42 Booker Drive, Newburgh, NY 12550 (the "Property") in October 2005. (Am. Compl. 3, 5.) The mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc., followed by Aurora Loan Services, and then to Nationstar Mortgage LLC ("Nationstar"). (*See id*.) *See also Nationstar Mortg. LLC*, 2020 WL 2836431, at *2.[2] At some later time, the mortgage was assigned to Rushmore, Plaintiff's current servicer. (*See* Am. Compl. 12.)

On or around January 2011, Plaintiff entered a modification conference that resulted in a modified loan agreement (the "modification agreement"). (*Id*.) That agreement was reviewed and accepted by the New York State Supreme Court in March 2015, after which the state court ordered Nationstar to modify the loan. (*Id*. at 5–6; *see also* Pl's Statement in Opp. ("Pl's Mem.") 2–3 (Dkt. No. 50).) Meanwhile, in February 2015, Plaintiff submitted a complete loss mitigation application to Nationstar, which Nationstar later acknowledged. (Pl's Mem. 2, 8.)

---

[1] In evaluating a pro se party's submissions, courts in the Second Circuit routinely "consider allegations contained in [a] [p]laintiff's [o]pposition" at the pleading stage. *Samuels v. Fischer*, 168 F. Supp. 3d 625, 645 n.11 (S.D.N.Y. 2016); *see also Elliott v. Nestle Waters N. Am. Inc*., No. 13-CV-6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (similar) (adopting report and recommendation in full).

[2] Plaintiff previously raised "impropriates with respect to both purported mortgage assignments," but those disputes are not relevant here. (*See* Am. Compl. 5.)

B. The Foreclosure Proceeding

Despite those interactions, Plaintiff alleges that Nationstar did not attempt to help her avoid foreclosure. (Am. Compl. 6; Pl's Mem. 2–3.) Instead, Nationstar initiated a foreclosure action (the "Foreclosure Proceeding") in this Court in November 2016. (Am. Compl. 6.) *See Nationstar Mortg. LLC*, 2020 WL 2836431, at *2. That proceeding resulted in a foreclosure judgment, which in turn led to a foreclosure sale on November 28, 2022. (Pl's Mem. 8–9.) Plaintiff alleges that Rushmore, presumably after it took over the loan, "completed the final action . . . by foreclosing and selling the . . . property at auction." (*Id*. at 4.) Plaintiff also alleges that this sale deprived her of $602,000 in equity in her home. (*Id*. at 9.)

The procedural history of the Foreclosure Proceeding is relevant for statute of limitations purposes. Nationstar, of course, was ultimately successful, but it had to move for summary judgment two separate times. The Court granted its initial motion—filed on April 27, 2017, (*see* Mot. (Dkt. No. 16, 16-CV-8708 Dkt.)))—but the Second Circuit vacated and remanded because Plaintiff did not receive proper notice, *Nationstar Mortgage, LLC v. Hunte*, 775 F. App'x 20, 21–22 (2d Cir. 2019) (summary order). Nationstar moved for summary judgment again on December 5, 2019, (*see* Mot. (Dkt. No. 35, 16-CV-8708 Dkt)), and this Court again held that it was entitled to foreclosure. *Nationstar Mortg. LLC*, 2020 WL 2836431, at *2, 4.[3]

---

[3] Plaintiff disputed the validity of the modification agreement in the Foreclosure Proceeding, *see Nationstar Mortg. LLC*, 2020 WL 2836431, at *6, and renews those challenges here, (*see* Am. Compl. 10). The particulars of that dispute do not affect the instant Motion, but the Court notes that it found foreclosure appropriate regardless of the modification agreement's validity. *Nationstar Mortg. LLC v. Hunte*, No. 16-CV-8708, 2020 WL 5646141, at *4 (S.D.N.Y. Sept. 22, 2022) ("[Nationstar] is entitled to a judgment of foreclosure. . . . [I]t remains unclear whether this judgment should be entered on the original mortgage and note, or on the modification agreement.").

3

C. Procedural History

In its March 14, 2023, Opinion and Order, the Court denied Defendant's Motion for Summary Judgment for failure to comply with Local Rule 56.1 and granted Defendant leave to move for judgment on the pleadings. *Hunte*, 2023 WL 2504734, at *2, 5. Defendant filed the instant Motion on May 22, 2023. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 45).) The Court held a status conference on June 22, 2023, after which it directed Plaintiff to respond by July 31, 2023. (*See* Dkt. (minute entry for June 22, 2023).) Plaintiff filed her opposition on August 1, 2023, (*see* Pl's Mem.), and Defendant replied on August 14, 2023, (Reply Mem. of Law in Supp. of Mot. ("Def's Reply") (Dkt. No. 52)).

## II. Discussion

A. Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Accordingly, "[t]o survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (second alteration in original) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79, ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss [or a motion for judgment on the pleadings], a judge must accept as true all of the factual allegations contained in the complaint," *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, in adjudicating a Rule 12(c) motion, a court may consider the pleadings, their exhibits, statements or documents incorporated by reference in the pleadings, "any matter

5

of which [the court] can take judicial notice," and documents "integral" to the complaint. *120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*, No. 08-CV-6491, 2013 WL 12331487, at *4 (S.D.N.Y. Sept. 25, 2013) (citations omitted) (collecting cases).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

As a brief refresher, RESPA was enacted to ensure that consumers are informed about the "nature and costs of the [real estate] settlement process" and to protect them from "abusive practices" in the market for real estate services. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 260 (S.D.N.Y. 2017) (quoting 12 U.S.C. § 2601(a)). One such practice is "dual tracking" where "a servicer moves forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure." *Sylvester v. Interbay Funding LLC*, No. 15-CV-1736, 2017 WL 4382056, at *4 (S.D.N.Y. Sept. 29, 2017) (citation omitted). To curb dual tracking, RESPA's implementing regulations—specifically Regulation X—prevent a servicer from "mov[ing] for foreclosure judgment or [an] order of sale" after "receiving 'a complete loss mitigation application' from the borrower" within a certain time period and subject to certain exceptions. *Id*. (first alteration in original) (quoting 12 C.F.R. § 1024.41(f)–(g)).

6

Plaintiff argues that Nationstar engaged in dual tracking by moving for summary judgment in the Foreclosure Proceeding after she had submitted a loss mitigation application. (*See* Am. Compl. 12; Pl's Mem. 2–3.) And she appears to allege that Rushmore, her current servicer, assumed liability for that activity. (Am. Compl. 13; Pl's Mem. 3–5.) Defendant seeks judgment on the pleadings on a variety of procedural grounds, (*see generally* Def's Mem.), none of which is availing.

1. Timeliness & Admissibility

Defendant as a threshold matter objects to the timeliness and form of Plaintiff's Opposition. (Def's Reply 2–3.) Specifically, it contends that the Court should not consider the Opposition because it was "inexplicably" filed one day late and because it contains unsworn statements of fact. (*Id*. at 2.) The Court considers each issue in turn and finds each one to be unpersuasive.

First, Plaintiff's untimely filing is excusable. To begin, the Second Circuit enforces "standards of procedural leniency [with regard to pro se parties] rather than holding them to the rigidities of federal practice." *Bolling v. City of New York*, No. 18-CV-5406, 2020 WL 3002020, at *4 (S.D.N.Y. Feb. 3, 2020) (quoting *Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 93 (S.D.N.Y. 2009)), *report and recommendation adopted*, 2020 WL 1130709 (S.D.N.Y. Mar. 6, 2020). The Court does not treat lateness lightly, but Plaintiff's *less than twelve hour* filing delay does not forfeit the solicitude she is otherwise due. (*See* Dkt. No. 50 (receipt stating filing transaction was entered on 8/1/2023 at 11:15 AM ET).) *See also Bennett v. Care Corr. Sol. Med. Contracted*, No. 15-CV-3746, 2017 WL 4250519, at *2 (S.D.N.Y. Sept. 25, 2017) (considering a pro se plaintiff's motion for reconsideration notwithstanding the fact that the motion was filed seven days after the applicable deadline). And none of Defendant's cited cases supports a different result. *See, e.g.*, *Grp. One Ltd. v. GTE GmbH*, No. 20-CV-2205, 2023 WL 2710590, at

7

\*5 (E.D.N.Y. Mar. 30, 2023) (finding pro se motion for reconsideration untimely where it was filed "almost three months" after the court issued the underlying order); *Ahmad v. E. Ramapo Cent. Sch. Dist.*, No. 09-CV-1440, 2018 WL 3222543, at \*2 (S.D.N.Y. July 2, 2018) (pro se motion found to be untimely where it was filed "more than a month late").[4]  The Court therefore will not strike Plaintiff's Opposition on this basis.

Second, it is appropriate to consider the contents of Plaintiff's submission.  To understand Defendant's objection, a brief review of the docket is required.  Defendant's Motion is styled as a 12(c) Motion for Judgment on the Pleadings, (*see* Not. of Mot.; Def's Mem.), but it is listed on the docket as a "Motion for Summary Judgment," (Dkt. No. 43 (displaying "THIRD MOTION for Summary Judgment")).  Plaintiff filed a document styled as a Rule 56.1 statement in response, which is understandable given the information on the docket and the Court's discussion of Rule 56.1 issues in its prior Opinion.  (*See* Pl's Mem.)  Defendant, taking advantage of that (rather obvious) mistake, argues that, construed as a Rule 56.1 statement, Plaintiff's response is full of inadmissible hearsay because it is neither a sworn affidavit nor an unsworn statement certified under penalty of perjury.  (Def's Reply 2–3 (citing, inter alia, 28 U.S.C. § 1746).)

This argument raises concerns about Defense counsel's conduct in this case.  Generally, the *filer* is responsible for labeling their submissions on the docket.  *See* S.D.N.Y. Electronic Case Filing Rules & Instructions §§ 15.3–4 (explaining that filers choose from "160 separate motion Filing Events").  Assuming Defendant labeled its filing a "Motion for Summary

---

[4] The Court hoped Defense counsel would show more understanding considering it was their own "failure to follow Local Rules" that precipitated the instant Motion.  *See Hunte*, 2023 WL 2504734, at \*2, 5 (denying Defendant's motion for summary judgment for failure to comply with Rule 56.1 but granting leave to file a 12(c) motion).

Judgment," it bears responsibility for Plaintiff's (logical) decision to file a Rule 56.1 statement in response. Needless to say, if Defense counsel made that decision intentionally, their attempt to mislead Plaintiff and benefit from her confusion could be a basis for sanctions. *Kim v. Columbia Univ.*, No. 06-CV-5365, 2009 WL 528604, at *17 (S.D.N.Y. Mar. 2, 2009) (finding "[d]efense counsel's actions"—which were "designed to mislead [the] pro se [p]laintiff"—"merit[ed] sanctions" (italics omitted)). The Court here gives Defense counsel the benefit of the doubt; after all, they may have simply made a mistake. The failure to recognize that mistake, however, and Defense counsel's eagerness to exploit Plaintiff's obvious mishap are nevertheless troubling.

In any event, none of this is a reason to strike Plaintiff's submission. Instead of construing pro se submissions to violate procedural rules, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 624 (E.D.N.Y. 2021) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). And courts in pro se cases routinely consider "new facts raised in opposition papers to the extent that they are consistent with the complaint," *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018), even if the opposition is unsworn, *see Fenton v. Provow*, No. 20-CV-1564, 2022 WL 3904110, at *3 (N.D.N.Y. Aug. 5, 2022), *report and recommendation adopted*, 2022 WL 3908799 (N.D.N.Y. Aug. 30, 2022). Moreover, this is a Motion for Judgment on the Pleadings, which means the Court is concerned with plausible allegations, not admissible facts. *See Lively*, 6 F.4th at 301 (explaining that 12(c) standard is "identical" to 12(b)(6) standard); *Lynch*, 952 F.3d at 82 ("[T]he fact[s] asserted [at the pleading stage] need not be presented in a form that would be admissible at trial."); *see also In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 622 (S.D.N.Y.

9

2014) ("[P]laintiffs need not provide admissible proof at th[e] [pleading] stage.").[5] Additionally, Defendant challenges Plaintiff's submission only on admissibility grounds and does not suggest is inconsistent with the Amended Complaint. The Court therefore finds it appropriate to consider both the arguments and the factual allegations raised in Plaintiff's response.

### 2. Federal Rule of Civil Procedure 8

Defendant also argues that Plaintiff has failed to plead facts regarding its conduct. (Def's Mem. 6–7.) A plaintiff's task at the pleading stage is to provide "factual content that allows [a] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (same). Accordingly, "[a] complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed as to that defendant." *Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *7 (S.D.N.Y. Aug. 2, 2016) (citation omitted); *see also Latimer v. Annucci*, No. 21-CV-1275, 2022 WL 1137055, at *3 (S.D.N.Y. Apr. 18, 2022) ("[W]hen 'the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" (quoting *Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017))). While Plaintiff alleges few facts having to do with Rushmore, those facts are enough to make out a case for liability at this stage.

To be sure, Defendant is correct that the majority of Plaintiff's allegations relate to a different entity. Indeed, Plaintiff alleges that it was Nationstar—her loan servicer at the time— who violated Regulation X's "dual tracking" provisions by filing the Foreclosure Proceeding in

---

[5] In reply, Defendant appeared to assume this was "a motion for summary judgment." (Def's Reply 3.) It is not. (*See generally* Def's Mem.)

10

Federal Court and moving for summary judgment. (Am. Compl. 5–6.) All Plaintiff says about Rushmore is that it "is the current [s]ervicer" of her mortgage, (*id.* at 12), and that it "completed the final action" by selling her property at auction, (Pl's Mem. 4).[6]

What Defendant does not consider, however, is that it may have assumed liability when it took over as Plaintiff's servicer. As it turns out, the Court found several cases recognizing "that there may be successor liability . . . for claims brought under the RESPA[.]" *In re Ditech Holding Corp.*, 606 B.R. 544, 618 (Bankr. S.D.N.Y. 2019) (collecting cases); *see also Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 242, 262–72 (D. Conn. 2017) (considering the merits of a RESPA claim against "the successor by merger" to an entity that "owned the [plaintiff's] mortgage"); *Prince v. U.S. Bancorp*, No. 09-CV-1095, 2010 WL 3385396, at *5 (D. Nev. Aug. 25, 2010) ("Defendant cites no authority for the proposition that it cannot be held liable as a successor-in-interest on a RESPA claim. Indeed, federal courts appear to assume that a successor in interest can be held liable for RESPA claims under certain circumstances." (citation omitted)). Given the solicitude owed to Plaintiff, it is at least plausible that Defendant assumed Nationstar's liability when it took over the loan. That issue is highly fact-dependent, *see In re Ditech*, 606 B.R. at 618, and although liability may not attach under these circumstances, *see, e.g.*, *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015), it is inappropriate to consider on the basis of the pleadings alone, *Abdollahi v. Washington Mutual, FA*, No. 09-CV-743, 2009 WL 1689656, at *1 (N.D. Cal. June 15, 2009) (explaining that "[w]hether JPMorgan assumed Washington Mutual's liability [under RESPA] as it pertains to [the] plaintiffs' mortgage [wa]s a question of fact, not a proper subject of a motion to dismiss").

---

[6] This latter allegation may constitute a distinct dual-tracking claim. The definition of dual tracking extends to "conduct[ing] a foreclosure sale" after a borrower has submitted a loss mitigation application. *See* 12 C.F.R. § 1024.41(g).

3. Preclusion

Defendant further contends that "any purported claim regarding the propriety of the foreclosure is barred by res judicata and estoppel because this Court cannot collaterally attack the judgment of foreclosure and sale." (Def's Mem. 8 (capitalization omitted).) "The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (italics, quotation marks, and citation omitted). At its core, res judicata "is a rule against the splitting of actions that could be brought and resolved together." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006).

Four requirements are necessary for res judicata to apply to subsequent litigation. The prior decision must have been "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012) (citation omitted). To determine whether the fourth element is satisfied, courts look to "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Brown Media*, 854 F.3d at 157 (citation omitted); *see also Jean-Gilles v. County of Rockland*, 463 F. Supp. 2d 437, 453 (S.D.N.Y. 2006) (stating "[t]wo actions arise from the same claim" when "the underlying facts are related in time, space, origin[,] or motivation," "they form a convenient trial unit," and "their treatment as a unit conforms to the parties' expectations" (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000))).

Defendant argues that "the judgment of foreclosure and sale was final as to all questions at issue between the Parties, and concluded all matters of defense which were or could have been

12

litigated in the foreclosure action." (Def's Mem. 9.) However, "a dual tracking claim is not ripe (and therefore cannot be asserted as a []claim in a foreclosure proceeding) as long as foreclosure proceedings are still pending[,] and the plaintiff has not yet lost her property." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *15 (S.D.N.Y. Mar. 9, 2020) (quotation marks omitted); *see also Wilmington Tr., Nat'l Ass'n as Tr. of ARLP Sec. Tr., Series 2014-2 v. Garcia*, No. 15-CV-378, 2018 WL 7253970, at *8 (S.D. Tex. Dec. 19, 2018) ("If their dual tracking claim is legitimate, [the d]efendants may file suit once the servicer has foreclosed on their property, or they are able to demonstrate other damages."); *Wenegieme v. Bayview Loan Servicing*, No. 14-CV-9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015) (holding that the plaintiffs' "dual tracking claim under 12 C.F.R. § 1024.41(f) [was] premature" because "their claim for damages [was] contingent on a negative outcome in a proceeding that [was at that time] currently ongoing—and that they [could still] win"). As such "a Dodd-Frank dual tracking claim would not have been ripe during the Foreclosure [Proceeding] and, therefore, is not now barred by res judicata." *Almazon*, 2020 WL 1151313, at *15 (italics omitted); *see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata[.]" (italics omitted)).

      Because Plaintiff's dual-tracking claim could not have been raised in the Foreclosure Proceeding, it is likewise not barred by collateral estoppel. Collateral estoppel, or issue preclusion, bars relitigation of an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quoting

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)). Although Plaintiff raised dual tracking issues in the Foreclosure Proceeding, the Court recognized that dual tracking could not be raised at that time because it "is not a defense to foreclosure," and declined to rule on the issue. *Nationstar Mortg. LLC*, 2020 WL 5646141, at *3 n.7 (citation omitted). The claim was therefore not "actually decided" in the Foreclosure Proceeding. *See d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 116 F. Supp. 3d 349, 357 (S.D.N.Y. 2015) (citation omitted).

4. Judicial Estoppel

Defendant also argues that Plaintiff's claim is barred by the doctrine of judicial estoppel. Specifically, it states that because Plaintiff attacked the modification agreement in the Foreclosure Proceeding, she should not be allowed to rely on that agreement to support her claim. (Def's Mem. 8–10.) "The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. A party invoking judicial estoppel must show that (1) another party advanced an inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner." *Cody v. Charter Commc'ns, LLC*, No. 17-CV-7118, 2020 WL 3639935, at *7 (S.D.N.Y. July 6, 2020) (quoting *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 155 n.7 (2d Cir. 2007)). However, "judicial estoppel is not a mechanical rule," and courts "must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of" applying the doctrine. *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

Defendant here fails at the first step because it has not demonstrated that Plaintiff adopted inconsistent positions. According to Defendant, Plaintiff "successfully argued the modification was invalid" in the foreclosure proceeding and now states a claim that "Rushmore violated the

14

modification agreement." (Def's Mem. 9.) Defendant does not cite any portion of the record to support this argument, nor does it cite any statements from Plaintiff. And it is unclear why the modification agreement is relevant to her claim here. All a dual-tracking claim requires is that a plaintiff show that "a servicer move[d] forward *with foreclosure proceedings* while simultaneously working with the borrower to avoid foreclosure." *See Wenegieme*, 2015 WL 2151822, at *2 (emphasis added). Plaintiff clearly states that she completed a loss mitigation application in 2015, before Nationstar initiated the Foreclosure Proceeding. (Pl's Mem. ¶ 3.) While Plaintiff did successfully challenge the modification agreement in the Foreclosure Proceeding, *Nationstar Mortg. LLC*, 2020 WL 5646141, at *3 (finding modification agreement void), that did not halt the foreclosure *proceeding*, and this Court ultimately entered judgment, *see id.* at *4 (holding Nationstar "is entitled to a judgment of foreclosure"). Plaintiff's arguments are consistent with that procedural history, and Rushmore offers no other basis to apply judicial estoppel here.[7]

### 5. Statute of Limitations

Finally, Defendant briefly argues that Plaintiff's claim is time-barred. (Def's Mem. 7.) "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired." *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 252 (S.D.N.Y. 2019) (quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995)). Defendant has failed to carry that burden here.

---

[7] Defendant suggests in a heading in its reply that this Action is barred by the *Rooker-Feldman* doctrine. That doctrine "prohibits federal courts from exercising jurisdiction over suits challenging final state court orders when doing so would 'essentially amount to appeals of state court judgments.'" *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (quoting *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)). Where, as here, the plaintiff does not "challenge the foreclosure process itself," *Rooker-Feldman* does not bar follow-on RESPA claims. *See Tanasi*, 257 F. Supp. 3d at 252–53 (collecting cases).

Regulation X provides that borrowers may enforce its dual tracking provisions "pursuant to [§] 6(f) of RESPA," 12 C.F.R § 1024.41(a), and claims arising under § 6(f) (codified at 12 U.S.C. § 2605) must be filed within three years "from the date of the occurrence of the violation," 12 U.S.C. § 2614.[8]  Defendant construes the Amended Complaint to allege a violation in 2016, (Def's Mem. 7; Def's Reply 5), which would place this March 15, 2022, Action outside the limitations period.[9]  Plaintiff counters that her claim accrued on December 5, 2019, when Nationstar filed its second motion for summary judgment, placing her claim within the limitations period.  (Pl's Mem. 6.)[10]

This dispute precludes judgment on the pleadings.  For starters, Defendant does not point to any authority supporting its view that a dual-tracking claim arose in 2016.  (*See generally* Def's Mem.; Pl's Mem.)  And the caselaw the Court is aware of lends Plaintiff at least some support.  Courts in the Second Circuit have explained that Regulation X's dual tracking provision "extends only to moving for a foreclosure judgment or order of sale, or conducting that sale."  *Almazon*, 2020 WL 1151313, at *18.  It does *not* necessarily "prohibit a servicer from

---

[8] RESPA includes a one-year statute of limitations for claims arising under different provisions, but Defendant provides no authority supporting its application to dual-tracking claims.  The one case it cites involved a violation of § 2607, not § 2605.  *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 289 (S.D.N.Y. 2011).

[9] Defendant appears to interpret the Amended Complaint differently in its initial brief and in its reply, first construing it to allege a violation in 2015, (Def's Mem. 7), and then to allege one in 2016, (Def's Reply 5).  The Court assumes that Defendant means 2016, as a dual-tracking violation could not have accrued before Nationstar initiated the Foreclosure Proceeding (the second "track") in November 2016.  *See* 12 C.F.R. § 1024.41(g) (laying out Regulation X's restriction on "mov[ing] for foreclosure judgment or order of sale" after "a borrower submits a complete loss mitigation application").

[10] Plaintiff states that Nationstar filed this motion on November 30, 2019, (Pl's Mem. 6), but that was the date Nationstar's motion was due.  It actually filed the motion several days late on December 5, 2019.  *See Nationstar Mortg. LLC*, 2020 WL 2836431, at *2.

16

advancing the foreclosure process," unless its actions "will 'directly result in . . . a foreclosure judgment.'" *Id*. (quoting Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10834 (Feb. 14, 2013)).  By contrast, the Court is aware of one case suggesting a dual-tracking claim "commenced on the date of the filing of the [defendant's] second summary judgment motion" because it constituted the operative "[motion] for foreclosure judgment."  *See Rodríguez-Wilson v. Banco Santander de Puerto Rico*, 501 F. Supp. 3d 53, 58 (D.P.R. 2020) (citation omitted).  The same may well be true here.[11]  Accordingly, Defendant has not demonstrated that the limitations period has expired, and judgment on the pleadings is therefore inappropriate on that basis.

### III.  Conclusion

For the aforementioned reasons, Defendant's Motion is denied.  The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 43).  The Court will hold a status conference on April 3, 2024, at 10:00 AM.

SO ORDERED.

Dated:   March 11, 2024
         White Plains, New York

                                                    KENNETH M. KARAS
                                                    United States District Judge

---

[11] Defendant suggests that "Plaintiff failed to submit any documentary proof [that] she actually submitted any loan modification application" and argues that this, too, is a reason her claim is time barred.  (Def's Reply 5.)  However, Plaintiff's *allegation* that she completed such an application in February 2015, (*see* Pl's Mem. 2), is sufficient at this stage, *see Lively*, 6 F.4th at 301 ("Until both parties have an opportunity to test their evidence at summary judgment or trial, [the Court] must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party.").