UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER HUNTE,

*Plaintiff*,

v.

RUSHMORE LOAN MANAGEMENT SERVICES, LLC,

*Defendant*.

No. 22-CV-2169 (KMK)

OPINION & ORDER

Appearances:

Esther Hunte
Newburgh, NY
*Pro Se Plaintiff*

Steven Rosenfeld, Esq.
Gross Poloway LLC
Williamsville, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff Esther Hunte ("Plaintiff"), proceeding pro se, brings this Action against Rushmore Loan Management Services, LLC ("Defendant"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. (*See* Am. Compl. ("FAC") 2 (Dkt. No. 4).) Before the Court is Defendant's Motion for Summary Judgment (the "Motion"). (*See* Def.'s Not. of Mot. Summ. J. (Dkt. No. 98).) For the following reasons, Defendant's Motion is granted.

## I. Background

The Court assumes the Parties' familiarity with the facts and the procedural history of this case as described in *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2024

WL 1076683, at *1–2 (S.D.N.Y. Mar. 11, 2024), *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2023 WL 2504734, at *2 (S.D.N.Y. Mar. 14, 2023), and *Nationstar Mortg. LLC v. Hunte*, No. 16-CV-8708, 2020 WL 2836431, at *2 (S.D.N.Y. June 1, 2020), *aff'd*, No. 22-1447, 2024 WL 161372 (2d Cir. Jan. 16, 2024) (summary order). For the sake of expediency, the Court recounts only those facts necessary to decide Defendant's Motion.

A. Factual Background[1]

In October 2005, Plaintiff obtained a mortgage on a property located at 42 Brooker Drive, Newburgh, NY 12550 (the "Property"). (Def.'s Stmt. of Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1") ¶ 1 (Dkt. No. 101).)[2] The mortgage was for a principal amount of $337,840.00 and is memorialized in a note (the "Note") dated October 28, 2005 that was recorded in the Orange County Clerk's Office on September 6, 2006. (*Id.*) The mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc., followed by Aurora Loan Services, and then to Nationstar Mortgage LLC ("Nationstar"). *Hunte*, 2024 WL 1076683, at *1. At some later time, the mortgage was assigned to Defendant. *Id.*

---

[1] Although Plaintiff received a notice advising her that under Federal Rule of Civil Procedure 56 and this Court's Local Rules, failing to respond to Defendant's asserted undisputed facts at the summary judgment stage could result in those facts being deemed admitted, (*see* Not. to Pro Se Litigant (Dkt. No. 102) ("If you do not respond to the motion . . . contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true.")), she did not respond to Defendant's 56.1 statement, nor did she respond to the Motion. The facts in Defendant's 56.1 Statement will therefore be deemed admitted. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 [s]tatement, that fact will be deemed admitted pursuant to the local rule." (quotation marks and citation omitted)); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("Pro se litigants are . . . not excused from meeting the requirements of Local Rule 56.1[.]" (emphasis omitted)).

[2] Although this filing is titled "Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1[,]" the Court understands it to be Defendant's 56.1 Statement because it was filed by Defendant's counsel. (Def.'s 56.1 at 1.) Accordingly, the Court refers to it as such.

On March 24, 2015, Plaintiff executed a modification agreement, which modified the terms of the mortgage by reducing the interest rate to 4.25%, extending its maturity date to April 1, 2055, and creating a new unpaid principal balance of $459,143.70, which included a $124,746.71 non-interest-bearing, deferred principal balance and a $334,396.99 interest-bearing principal balance. (Def.'s 56.1 ¶ 2.) Plaintiff subsequently defaulted on the mortgage by failing to make a payment on March 1, 2016, or any subsequent payments as required by the Note's terms. (*Id.* ¶ 3.) As a result, on November 9, 2016, Nationstar commenced a foreclosure action on the Property. (*Id.* ¶ 4.) On December 5, 2019, Nationstar filed a motion for judgment of foreclosure and sale, followed by a second motion for judgment of foreclosure and sale on February 21, 2022. (*Id.* ¶¶ 5–6.) Pursuant to the judgment of foreclosure and sale, the Property was sold on November 29, 2022. (*Id.* ¶ 7.) Nationstar had not received a complete loss mitigation application from Plaintiff on any of these dates. (*Id.* ¶ 9.)

B. Procedural Background

Plaintiff commenced this Action on March 15, 2022, (*see* Compl. (Dkt. No. 1)), and filed her Amended Complaint on March 28, 2022, (*see* FAC). Defendant filed its Answer on June 2, 2022, (*see* Answer (Dkt. No. 13)), and moved for summary judgment for the first time on August 5, 2022, (*see* Def.'s First Mot. Summ. J. (Dkt. No. 16)). On March 14, 2023, the Court denied Defendant's Motion for failure to comply with Local Rule 56.1 and granted Defendant leave to move for judgment on the pleadings. *Hunte*, 2023 WL 2504734, at *2, *5.

On May 22, 2023, Defendant filed a motion for judgment on the pleadings. (Not. of Mot. (Dkt. No. 43).) On August 1, 2023, Plaintiff filed her Opposition, (Pl.'s Mem. in Opp'n (Dkt. No. 50)), and on August 14, 2023, Defendant replied, (Reply Mem. of Law in Supp. Mot. (Dkt.

No. 51)). On March 11, 2024, the Court denied Defendant's Motion. *Hunte*, 2024 WL 1076683, at *3–8.

On April 10, 2024, the Court ordered the Parties to participate in a 90-day discovery period, (Scheduling Order (Dkt. No. 55)), and Defendant served its first Request for Production of Documents on May 23, 2024, (*see* Req. for Produc. of Docs. (Dkt. No. 56)). What ensued was a protracted discovery process in which Plaintiff repeatedly refused to comply with the Court's directives, leading the Court to preclude Plaintiff from relying on evidence not produced prior to December 17, 2024, and ordering Plaintiff to make Dr. Grigg, the author of a short note she had submitted as evidence of damages, available for Defendant to depose by January 29, 2025. (*See* Order (Dkt. No. 77) (detailing Plaintiff's refusal to comply with the discovery process and the necessity of ordering Dr. Grigg be made available for deposition).)

On July 21, 2025, Plaintiff informed the Court that she would make Dr. Grigg available for a deposition. (Letter from Pl. Esther Hunte to Court (July 21, 2025) (Dkt. No. 85).) However, on August 29, 2025, Defendant informed the Court that Dr. Grigg still had not been made available for deposition and requested the Court exclude his note from the record. (Letter from Steven Rosenfeld, Esq. to Court (Aug. 29, 2025) (Dkt. No. 88).) In response, the Court granted Defendant's request to exclude Dr. Grigg's note and set a briefing schedule for its proposed motion for summary judgment. (Scheduling Order (Dkt. No. 90).) Defendant submitted its Motion for Summary Judgment on December 18, 2025. (*See* Def.'s Not. of Mot. Summ. J.; Decl. of Steven Rosenfeld, Esq. in Supp. of Def's Mot. Summ. J. ("Rosenfeld Decl.") (Dkt. No. 99); Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 100); Def.'s Statement of Material Facts Pursuant to Local R. 56.1 ("Def.'s 56.1") (Dkt. No.

101).) Plaintiff did not submit a response and has not communicated with the Court since July 23, 2025. (*See generally* Dkt.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga Coun*ty, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (emphasis and citation omitted)).

B. Analysis

RESPA was enacted to ensure that consumers are informed about the "nature and costs of the [real estate] settlement process" and to protect them from "abusive practices" in the market

for real estate services. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 260 (S.D.N.Y. 2017) (quoting 12 U.S.C. § 2601(a)). One such practice is "dual tracking," where "a [loan] servicer moves forward with foreclosure proceedings while simultaneously working with the borrower to avoid foreclosure." *Sylvester v. Interbay Funding LLC*, No. 15-CV-1736, 2017 WL 4382056, at *4 (S.D.N.Y. Sept. 29, 2017) (citation omitted). To curb dual-tracking, RESPA's implementing regulatory scheme—specifically, Regulation X—prohibits "a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation, application." *Dins v. Bank of Am., N.A.*, No. 16-CV-5741, 2017 WL 570944, at *4 (S.D.N.Y. Feb. 13, 2017) (quotation marks and citation omitted); *see also Sylvester*, 2017 WL 4382056, at *4 ("[RESPA's implementing] regulations prevent a servicer—within certain windows of time and subject to certain exceptions—from (1) 'mak[ing] the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process,' or (2) 'mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale,' after receiving 'a complete loss mitigation application' from the borrower." (quoting 12 C.F.R. § 1024.41(f)–(g)).

Interpreted broadly, Plaintiff's Amended Complaint claims that Nationstar engaged in dual tracking by foreclosing on the Property after she submitted a loan modification agreement and that Defendant became liable for Nationstar's actions when it took over as her loan servicer. (FAC 2, 5–6, 12.)[3] Defendant argues it is entitled to summary judgment because Plaintiff fails to

---

[3] The Court notes that Plaintiff also argues that Nationstar voided the modification agreement by failing to modify Plaintiff's mortgage in accordance with the agreement. (FAC 11–12.) However, Regulation X requires the existence of a loss mitigation agreement to trigger the loan servicer's obligation not to foreclose on a mortgaged property. *See Sylvester v. Bay view Loan Servicing LLC*, No. 15-CV-1736, 2016 WL 3566234, at *4 (S.D.N.Y. June 24, 2016) (explaining how a complete loss mitigation application is a necessary part of alleging a dual tracking claim). In light of the Court's obligation to interpret a pro se plaintiff's pleadings to raise the strongest arguments they suggest, the Court is unpersuaded by Plaintiff's assertion that

establish a causal link between Defendant's conduct and the alleged harm, does not provide admissible evidence of the alleged harm, and is barred by the statute of limitations. (*See* Def.'s Mem. 12 (arguing that Plaintiff has failed to "come forward with admissible, affirmative proof" of damages); *id.* 15–16 (asserting that "[a] signed modification [agreement] in 2015 . . . does not have anything to do with whether a completed loss mitigation application was submitted and under consideration over four years later" during the pendency of the foreclosure action on the Property).)

1. Damages

Both actual and statutory damages are available under RESPA. "To obtain statutory damages a plaintiff must establish a pattern or practice of noncompliance with [RESPA's] requirements . . . ." *Ehrenfeld v. Wells Fargo, N.A.*, No. 19-CV-2314, 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019) (alteration adopted) (quoting *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017)). By contrast, "to recover actual damages, [a] plaintiff 'must allege that the damages were proximately caused by the defendant's violation of RESPA." *Id.* (quoting *Sutton*, 288 F. Supp. 3d at 264); *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2014 WL 4742509, at *5 (E.D.N.Y. Sept. 23, 2014) ("In order to recover actual damages, a plaintiff must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under [RESPA] . . . ." (citations omitted)). "In other

---

Nationstar's alleged inaction invalidated the modification agreement because Plaintiff has produced no evidence to support this assertion and crediting it would render her unable to raise a dual tracking claim. *See Pierre v. Cap. One Fin. Corp.*, No. 21-CV-30, 2022 WL 801321, at *5 n.12 (E.D.N.Y. Mar. 16, 2022) ("In determining what legal claims a pro se litigant has raised, the court's imagination should be limited only by the pro se litigant's factual allegations, not by the legal claims set out in her pleadings." (alterations adopted, quotation marks and citation omitted)); *accord Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (same).

words, Plaintiff must specifically allege and show how Defendant's purported RESPA violation[]—rather than Plaintiff's underlying failure to pay her mortgage and the subsequent foreclosure sale—gave rise to her damages." *Manzolillo v. Nationstar Mortg.*, LLC, 765 F. Supp. 3d 157, 166 (E.D.N.Y. 2025) (citations omitted); *see also Ehrenfeld*, 2019 WL 4933631, at *5 (finding the plaintiff had not shown the defendant's alleged RESPA violations, rather than the underlying failure to pay her mortgage and potential foreclosure sale, caused her purported emotional distress).

Because Plaintiff does not allege Defendant engaged in a pattern or practice of RESPA violations, (*see generally* FAC), the Court interprets her Amended Complaint as seeking actual damages for the "depression and emotional harm" she claims to have suffered as a result of Defendant's alleged actions, (*id.* at 6). However, as Defendant points out, Plaintiff has not alleged facts or submitted admissible evidence showing how Defendant's alleged RESPA violations—rather than the underlying failure to pay her mortgage or foreclosure and sale of the Property—caused these emotional damages. (*See* Def.'s Mem. 9 ("[A]s to damages, Plaintiff's [A]mended [C]omplaint solely summarily states that . . . Plaintiff suffered emotional damages in the form of 'depression and emotional harm from this ordeal.'" (citations omitted)); *see generally* FAC.) Without such a showing, Plaintiff has not alleged a RESPA violation, and a reasonable jury could not find Defendant proximately caused the harm alleged. *See Roth v. CitiMortgage*, No. 12-CV-2446, 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) (finding the plaintiff failed to allege a RESPA violation when she "failed to allege any facts to support the assertion that the alleged RESPA violations proximately caused her emotional distress and harm" (quotation marks omitted)).

Defendant also points out, and the Court agrees, that Plaintiff has failed to produce admissible evidence of her alleged harm. On April 10, 2024, the Court ordered the Parties to participate in a 90-day discovery period. (Scheduling Order (Dkt. No. 55).) However, as detailed in the Court's September 25, 2025 Order, this became a protracted process in which Plaintiff repeatedly failed to adhere to the Court's deadlines and directives despite ample extensions, (*see* Order ("Second Discovery Order") 1–2 (Dkt. No. 90) (describing Plaintiff's deficient discovery responses)), which led the Court to preclude Plaintiff from relying on evidence produced after December 17, 2024, (Order ("First Discovery Order") 4 (Dkt. No. 77)). Additionally, because Dr. Grigg was not made available for a deposition, the Court precluded Plaintiff from relying on Dr. Grigg's note to support her allegations of harm. (Second Discovery Order 5.) Without Dr. Grigg's note, the record is devoid of admissible evidence indicating that Plaintiff suffered the harm alleged, so no reasonable jury could return a verdict in her favor. *Manzolillo*, 765 F. Supp. 3d at 166 (granting summary judgment for the defendant where the "[p]laintiff fail[ed] to allege facts establishing that [the] [d]efendant's purported RESPA violation caused her damages[] . . . [and] also provide[d] no evidentiary support"); *Corazzini v. Litton Loan Servicing LLP*, No. 09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (granting summary judgment for the defendant because the plaintiff "failed to establish that she was actually damaged by any [RESPA] violation or that [the] defendant ha[d] exhibited a pattern of noncompliance making her entitled to statutory damages[,]" which was "fatal to her claim" (citations omitted)).

2. Statute of Limitations

Dual-tracking claims are subject to a three-year statute of limitations, beginning on "the date of the occurrence of the violation." 12 U.S.C. § 2614; *see also Rodríguez-Wilson v. Banco*

*Santander de Puerto Rico*, 501 F. Supp. 3d 53, 57–58 (D.P.R. 2020) (same). The submission of a loss mitigation application to a loan servicer "is the trigger for the dual tracking prohibition." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *18 (S.D.N.Y. Mar. 9, 2020).

Plaintiff alleges that she entered into the modification agreement with Nationstar in 2015. (FAC 5.) After Plaintiff ceased payments on the Note in March 2016, Nationstar initiated the foreclosure proceeding in this Court in November 2016. *Hunte*, 2024 WL 1076683, at *1. The procedural history of the foreclosure proceeding is relevant for statute of limitation purposes. Although Nationstar was ultimately successful in foreclosing on the Property, it had to move for summary judgment two separate times. *Id.* The Court granted Nationstar's initial motion, filed on April 27, 2017, then the Second Circuit vacated and remanded the Court's order granting that motion because Plaintiff had not received proper notice. *Id.* at *2 (citing *Nationstar Mortg., LLC v. Hunte*, 775 F. App'x 20, 21–22 (2d Cir. 2019) (summary order)). Nationstar moved again for summary judgment on December 5, 2019, and the Court again held that it was entitled to foreclosure. *Nationstar Mortg. LLC*, 2020 WL 2836431, at *2, 4. The Court subsequently granted Nationstar's Motion for Judgment of Foreclosure and Sale on February 21, 2022, and the foreclosure sale took place on November 29, 2022. "Courts in the Second Circuit have explained that Regulation X's dual tracking provision 'extends only to moving for a foreclosure judgment or order of sale, or conducting that sale[,]'" *Hunte*, 2024 WL 1076683, at *7 (quoting *Almazon*, 2020 WL 1151313, at *18), so, despite Defendant's argument to the contrary, (*see* Def.'s Mem. 15–16 (arguing this Action is time-barred because it commenced four years after Plaintiff claims to have submitted the loan modification agreement)), this Action, which Plaintiff commenced on March 15, 2022, is not time-barred by RESPA's three-year statute of limitations.

However, this Action suffers from an equally fundamental malady: Defendant has produced evidence indicating no modification agreement was pending on the relevant dates, (Def.'s 56.1 ¶ 9), and Plaintiff has failed to produce admissible evidence to the contrary, (*see generally* Dkt.). Based on this record, no reasonable jury could find that Defendant engaged in dual tracking by foreclosing on Plaintiff's property while a modification agreement or other loan mitigation application was pending. *See Galindo v. Nationstar Mortg., LLC*, No. 23-CV-346, 2024 WL 3046411, at *3 (S.D. Tex. June 18, 2024) (granting the defendant's summary judgment motion on the plaintiff's RESPA claim because "[t]here is no evidence that [the] [p]laintiff submitted a complete loss mitigation application"); *Jackson v. Specialized Loan Servicing, LLC*, No. 17-CV-7169, 2019 WL 4674572, at *7 (N.D. Ill. Sept. 25, 2019) ("Because [the] [p]laintiffs did not have a pending loss mitigation application at the time [the] [d]efendant moved for foreclosure judgment, [the] [d]efendant is entitled to summary judgment on [the plaintiffs'] RESPA claim.").

## III. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 98, enter judgment for Defendant, and close the case. The Clerk is also respectfully directed to mail a copy of this Order & Opinion to Plaintiff at the address listed on the Docket.

SO ORDERED.

Dated: August 31, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge